UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**MOONLIGHT BASIN RANCH LP**,

Debtor.

Case No. **09-62327-11**

**LEHMAN COMMERCIAL PAPER INC.**
And **LEHMAN BROTHERS HOLDINGS INC.**,

Plaintiffs.

-vs-

**MOONLIGHT BASIN RANCH, LP, A/K/A MOONLIGHT BASIN RANCH, L.P., A/K/A MOONLIGHT BASIN RANCH COMPANY, A/K/A MOONLIGHT BASIN RANCH, LTD.**, **MOONLIGHT LODGE, LLC, MOONLIGHT SPA, LLC, MOONLIGHT GOLF LLC**, **MOONLIGHT BASIN, LLC**, **MOONLIGHT BASIN MEZZ LLC**, **MOONLIGHT BASIN HOLDINGS LLC**, **MOONLIGHT BASIN RANCH, INC.**, **TREELINE SPRINGS, L.L.C.**, **MOUNTAIN TOP CONSTRUCTION COMPANY, L.L.C., LONE MOUNTAIN FOOD & BEVERAGE, LLC**, **LEE POOLE**, **SIX SHOOTER, L.C.C.**, **JVLP, L.C.C.**, **TIM WILLIAM ANDERSON**, **AARDVARK, L.L.C.**, and **FRONTIER STONE, L.L.C**,

Defendants.

Adv No. **10-00009**

# MEMORANDUM of DECISION

1

At Butte in said District this 26th day of August, 2010.

In this Adversary Proceeding, two matters were submitted to the Court without hearing: Woodlands Commercial Bank's Motion to Dismiss Third Party Complaint filed June 4, 2010, at docket entry no. 56; and Lehman Commercial Paper Inc., Lehman Brothers Holdings, Inc., Francis Gilhool, David O'Reilly, and Kurt Kohlmeyer's Motion to Dismiss the Counterclaims and Third Party Complaint of Moonlight Debtors filed June 4, 2010, at docket entry no. 59. Also, after due notice, a hearing was held August 10, 2010, in Butte on the Motion for Protective Order and Stay of Discovery by Lenders and Third Party Defendants filed by Lehman Commercial Paper Inc., Lehman Brothers Holdings, Inc., Francis Gilhool, David O'Reilly, and Kurt Kohlmeyer on July 16, 2010, at docket entry no. 103, and on Woodlands Commercial Bank's Motion to Stay Certain Discovery Activities and to Vacate the Trial Date filed July 16, 2010, at docket entry no. 107.[1]

FACTS

Lehman Commercial Paper, Inc. ("LCPI") and Lehman Brothers Holdings, Inc. ("LBHI") commenced this Adversary Proceeding on February 2, 2010, by filing a single count declaratory judgment complaint against the various Defendants. On March 5, 2010, Moonlight Basin Ranch Limited Partnership, Moonlight Basin Ranch, Inc., Moonlight Lodge, LLC, Moonlight Spa, LLC, Moonlight Golf, LLC, Moonlight Basin, LLC, Treeline Springs, LLC, Mountain Top Construction Company, LLC, Lone Mountain Food & Beverage, LLC and Moonlight Basin Mezz, LLC (collectively the "Moonlight Claimants") filed their Answer, Counterclaims and Third Party

---

[1] The Motion to Vacate Trial date is deemed moot because pursuant to a stipulation filed July 27, 2010, and approved that same date, the trial in this Adversary Proceeding scheduled to commence on October 12, 2010, was continued to December 8, 2010, and continuing on December 9, 10 and 13, 2010.

Complaint. The Counterclaims/Third Party Complaint brought by the Moonlight Claimants includes fifteen counts against not only LCPI and LBHI, but also Lehman Brothers Commercial Bank, Francis X. Gilhool, David O'Reilly, and Kurt Kohlmeyer.[2] The fifteen counts asserted by the Moonlight Claimants are as follows: 1) rescission (as it relates to a June 19, 2009, Forbearance Agreement; 2) negligent misrepresentation; 3) constructive fraud; 4) actual fraud; 5) breach of contract; 6) breach of implied covenant of good faith and fair dealing; 7) tortious interference with contractual relationships; 8) damage to business reputation; 9) promissory estoppel; 10) breach of fiduciary duty; 11) conspiracy to commit fraud; 12) unjust enrichment; 13) aiding and abetting fraud; 14) RICO violations; and 15) punitive damages. The Moonlight Claimants assert in their Third Party Complaint that "Lehman Brothers Commercial Bank is an FDIC-insured commercial bank with its main offices located at Woodlands Business Park Tower #1, 4001 South 700 East, Suite 410, Salt Lake City, Utah 84121." The Moonlight Debtors assert that Francis X. Gilhool is "a Managing Director of the Global Real Estate Finance Group of 'Lehman Brothers'" and his office at all relevant times was located in New York, NY. The Moonlight Debtors assert that David O'Reilly is "a Vice President of the Real Estate Investment Banking Division of 'Lehman Brothers'" and his office at all relevant times was located in New York, NY. The Moonlight Debtors next assert that Kurt Kohlmeyer is "a Managing Director of the Financial Sponsors group or division of 'Lehman Brothers'" and his office at all relevant times was located in Chicago, Illinois.

In addition to the above, the Moonlight Claimants' Third Party Complaint contains

---

[2] The Third Party Complaint actually lists sixteen counts against the named Third Party Defendants, but count twelve was omitted.

3

approximately 20 pages of facts in support of the fifteen counts. In those facts, the Moonlight Claimants maintain that Kurt Kohlmeyer ("Kohlmeyer") owns property at the Moonlight Basin Ranch.[3] In February of 2007, the Chief Financial Officer at Moonlight Basin Ranch discussed with Kohlmeyer the various financing options which the Moonlight Resort was considering. Kohlmeyer represented at that time that "Lehman Brothers," through one or more of its related or affiliated companies, "had the capacity to address all of Moonlight's potential financial needs, including financing and business advisory services to assist with the sale of the [Moonlight Basin Ranch] Resort." Kohlmeyer then introduced Moonlight Basin Ranch management to Francis X. Gilhool ("Gilhool") and David O'Reilly ("O'Reilly').

On or about April 19, 2007, Moonlight Basin Ranch's Chief Financial Officer and Moonlight's General Counsel attended a meeting at Kohlmeyer's office in Chicago. O'Reilly attended the meeting and together with Kohlmeyer, presented Moonlight Basin Ranch with a document entitled "Discussion Materials" wherein "Lehman Brothers" represented that it had "assembled a multi-function team with significant transaction experience." According to the Moonlight Claimants, Kohlmeyer and O'Reilly represented at that time that they anticipated "that a definitive agreement [to sell the Resort] can be reached in six to eight weeks from the time formal solicitations commence."

---

[3] Moonlight Basin Ranch is a four-season resort property located in Madison County, Montana. Moonlight Basin Ranch includes a golf course, ski resort, real estate promotion and sales, condominium and single family home site development and construction, maintenance and delivery of public utility services, snow removal, restaurants and bars, a lodge, spa and other guest services and amenities, fire suppression services, life-safety services, road maintenance, and wildlife corridors. Moonlight Basin Ranch is owned and/or operated by various of the Moonlight Debtors and Claimants.

On July 19, 2007, Lehman Brothers, Inc. ("LBI") and Moonlight Basin Ranch, LP entered into an Advisory Agreement that gave LBI the exclusive right to provide financial advisory services in connection with an attempted sale of Moonlight Basin Ranch. LBI's fee under the Advisory Agreement was $75,000 per month plus an advisory fee upon LBI"s sale of Moonlight Basin Ranch. The Advisory Agreement was signed by LBI and Defendant Lee Poole ("Poole") on behalf of Moonlight Basin Ranch, LP.

While LBI endeavored to sell Moonlight Basin Ranch, Kohlmeyer, Gilhool and O'Reilly proposed that Lehman Brothers advance a short-term bridge loan to Moonlight. However, the proposed bridge loan required that the Moonlight Basin Ranch owners sign personal guarantees. Poole's partner was not willing to sign a personal guarantee. Lehman Brothers thus offered to extend a second short-term financing product that would allow Poole to purchase his partner's interest in Moonlight Basin Ranch. As set forth in the Third Party Complaint, the "[n]ew bridge [or Senior] loan [would] provide liquidity and ongoing development capital" while the "[n]ew [M]ezzanine loan [would] allow for the buyout of former partner." The Moonlight Claimants assert that "by late Spring/early Summer of 2007 Moonlight Basin Ranch was negotiating the terms and amounts of the Senior Loan and of the Mezzanine Loan with two separate sets of 'Lehman Brothers' negotiating teams and two separate highly skilled and sophisticated national and international law firms, hired by the two different 'Lehman Brothers' negotiating teams."

Relying on representations made by "Lehman," Kohlmeyer, Gilhool and O'Reilly that Lehman Brothers would either sell Moonlight Basin Ranch or provide long-term financing, Moonlight Basin Ranch, LP, together with the various guarantors and pledgees, entered into the Senior Loan on September 7, 2007. Again, relying on the representations made by "Lehman,"

5

Kohlmeyer, Gilhool and O'Reilly that they would either sell Moonlight Basin Ranch or provide longer-term financing, Moonlight Mezz, LLC, together with various guarantors and pledgees, entered into the Mezzanine Loan on September 7, 2007.  The Moonlight Claimant's Third Party Complaint goes on to detail various other events that transpired after September 7, 2007.  While not contained in the Moonlight Claimant's alleged facts, the record in this Adversary Proceeding also shows that pursuant to the Senior Loan Credit Agreement dated September 7, 2007, Lehman Brothers Commercial Bank, as administrative agent and LBI, as sole bookrunner and sole arranger, agreed to loan and in fact did loan, $100 million to Moonlight Basin Ranch, LP in order that Moonlight Basin Ranch, LP could satisfy existing debt, fund development, overhead and operating costs, fund an interest reserve account, fund a development account and pay transaction costs.  On that same date, Lehman Brothers Commercial Bank, LCPI and Moonlight Basin Ranch, LP executed an Agent Resignation and Appointment Agreement.  *See* Exhibit F to Plaintiffs' Complaint.  Pursuant to ¶ 2.1(b) of the Agent Resignation and Appointment Agreement, Lehman Brothers Commercial Bank resigned "as Administrative Agent under the Credit Agreement and (ii) from its various capacities as Administrative Agent and as a secured party, grantee, mortgagee, beneficiary, assignee and each other similar capacity under the other Loan Documents (the capacities set forth in preceding clauses (i) and (ii), collectively, the 'Agent Capacities', and such resignations, collectively, the 'Resignation'); provided that [Lehman Brothers Commercial Bank]'s rights to indemnity under, or rights under any other provision intended to survive the termination of, the Credit Agreement (including pursuant to subsection 9.2 of the Credit Agreement) and the other Loan Documents shall expressly survive, and shall, without limiting the rights of [LCPI] thereunder, inure to the benefit of [Lehman Brothers Commercial Bank] upon and

6

after the Resignation Time."

On June 5, 2008, LBI and Moonlight Basin Ranch, LP entered into an Advisory Amendment which extinguished LBI's exclusive right to provide financial advisory services and sell Moonlight Basin Ranch. On that same date, LCPI, Moonlight Basin Ranch, LP and various Defendants entered into a Senior Extension Agreement and LBHI, Moonlight Basin Mezz, LLC and various of the Defendants entered into a Mezz Ratification & Amendment. Once again, on June 19, 2009, LCPI, Moonlight Basin Ranch, LP and various of the Defendants entered into a Senior Forbearance Agreement.

LCPI, LBHI and LBI sought protection under the Bankruptcy Code on September 15, 2008. The deadline to file proofs of claim in the aforementioned bankruptcies expired on September 22, 2009, and none of the Moonlight Claimants filed timely claims in the Lehman bankruptcy cases.

In a Summary of the representations made by "Lehman and its representatives," the Moonlight Claimants argue that Lehman and its representatives promised three things:

> First, a Lehman Brothers subsidiary, Lehman Brothers Commercial Bank, would loan Moonlight Basin Resort Limited Partnership up to $100 million to refinance its existing debt, pay other creditors, obtain financing for capital improvements and additions, and obtain operating capital (the 'bridge loan' or 'Senior Loan'). This loan would be for a period of six months and was considered a short-term bridge loan which would remain in effect only while Lehman and its Representatives performed the other portions of its proposal.

> Second, Lehman Brothers proposed Moonlight create a new special purpose limited liability company to borrow $70 million from a different Lehman Brothers subsidiary, Lehman Brothers Holdings, Inc., the proceeds of which loan would be used primarily to buy the equity interest of Mr. Poole's other business partner (the "Mezzanine Loan").

> Third, Lehman Brothers promised that Lehman and its Representatives

7

would serve as the investment banker for Moonlight and promised to find qualified buyers for the sale of the Resort at a price sufficient to pay in full both the Senior Loan and the Mezzanine Loan and produce a significant return on equity for Mr. Poole's life-long investment in the Resort pursuant to an investment advisory services letter agreement (the "Investment Advisory Services Agreement").

## CONTENTIONS of the PARTIES

In its pending Motion to Dismiss, Woodlands seeks dismissal of the Moonlight Claimants' Third Party Complaint on grounds (1) the Moonlight Claimants offer collective allegations against multiple parties without distinction, thus taking an impermissible shotgun approach to their pleading in contravention of FED.R.CIV.P. 8(a), (2) the Third Party Complaint contains no factual allegations that could lead the Court to plausibly infer that Woodlands could be liable under any of the asserted theories of liability, and (3) that the Third Party Complaint, which sounds in fraud and deception, does not satisfy the heightened pleading standards of FED.R.CIV.P. 9(b).  Woodlands was formerly known as Lehman Brothers Commercial Bank, and at all relevant times was a subsidiary of Lehman Brothers Holdings, Inc.  Woodlands' pending Motion to Dismiss serves as the basis for Woodland's pending Motion to Stay Certain Discovery Activities.

Similarly, in a separate Motion to Dismiss, LCPI, LBHI, Kohlmeyer, Gilhool and O'Reilly seek dismissal of the Moonlight Claimants' Counterclaims and Third Party Complaint pursuant to FED.R.CIV.P. 9(b) and 12(b)(6).  First, LCPI, LBHI, Kohlmeyer, Gilhool and O'Reilly argue that the Moonlight Claimants' counterclaims are barred by four valid releases and federal bankruptcy law.  Next, LCPI, LBHI, Kohlmeyer, Gilhool and O'Reilly argue that Counts I through IV, XVI and XV of the Counterclaims and Third Party Complaint should be dismissed for the Moonlight Claimants' failure to satisfy the specificity required by FED.R.CIV.P. 9(b).  Finally, LCPI, LBHI,

8

Kohlmeyer, Gilhool and O'Reilly argue that Counts I, II, III, V, VII, VIII, X, XI, XV and XVI should be dismissed because such claims lack critical elements necessary to state a claim. Part of LCPI, LBHI, Kohlmeyer, Gilhool and O'Reilly's argument is based on the Moonlight Claimants' failure to timely assert claims in the Lehman bankruptcies, and on five releases, which are discussed extensively in a June 25, 2010, Memorandum of Decision and Order entered in this Adversary Proceeding, which Memorandum of Decision is incorporated herein by reference.

## APPLICABLE LAW

The general rules of pleading require that "a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P 8(a)(2). The requirement of a short and plain statement means a complaint must include "sufficient allegations to put defendants fairly on notice of the claims against them." *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir.1991). *See Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir.1995) (vague and scanty allegations fail to satisfy the notice requirement of Rule 8); 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1202 (2d ed.1990).

A plaintiff asserting multiple claims against multiple defendants,

> "must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the claim to put defendants on sufficient notice of the allegations against them." *Gauvin v. Trombatore*, 682 F.Supp. 1067, 1071 (N.D.Cal.1988). Even absent other pleading deficiencies, such "confusion of which claims apply to which defendants would require that the complaint be dismissed with leave to file an amended complaint." *Gen-Probe, Inc. v. Amoco Corp.*, 926 F.Supp. 948, 961 (S.D.Cal.1996) (citing *Gauvin,* 682 F.Supp. at 1071.) "Specific identification of the parties to the activities alleged is required ... to enable the defendant[s] to plead intelligently." *Van Dyke Ford, Inc. v. Ford Motor Co.*, 399 F.Supp. 277, 284 (E.D.Wis.1975).

*Cataulin v. Washington Mut. Bank*, 2009 WL 648921, *2 (S.D. Cal. March 9, 2009).

FED.R.CIV.P. 9(b) requires a party to "state with particularity the circumstances constituting fraud."[4] In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D.Cal.2003). A court may dismiss a claim grounded in fraud when its allegations fail to satisfy FED.R.CIV.P. 9(b)'s heightened pleading requirements. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,1107 (9th Cir.2003).

In discussing Rule 9 in the context of multiple defendants, the Ninth Circuit Court of Appeals explains:

> [T]here is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify *false statements* made by each and every defendant. "Participation by each conspirator in every detail in the execution of the conspiracy is unnecessary to establish liability, for each conspirator may be performing different tasks to bring about the desired result*." Beltz Travel Service, Inc.*, 620 F.2d at 1367. On the other hand, Rule 9(b) does not allow a complaint to merely lump multiple defendants together but "require[s] plaintiffs to differentiate their allegations when suing more than one defendant ... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F.Supp. 1437, 1439 (M.D.Fla.1998) (citation, quotation omitted). In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir.1989).

*Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct

---

[4] The particularity requirement of Rule 9(b) applies to state law causes of action: "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir.2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir.1985) (italics in original)).

which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). A motion to dismiss a claim "grounded in fraud" under FED.R.CIV.P. 9(b) for failure to plead with particularity is the "functional equivalent" of a FED.R.CIV.P. 12(b)(6) motion to dismiss for failure to state a claim. *Vess*, 317 F.3d at 1107.

In addressing a Rule 12(b)(6) challenge, the Court accepts all nonconclusory factual allegations in the complaint as true (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007) and *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009)), and construes the pleading in the light most favorable to the nonmoving party. *Tanner v. Heise*, 879 F.2d 572, 576 (9th Cir. 1989). "[D]ismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Schneider v. California Department of Corrections*, 151 F.3d 1194, 1196 (9th Cir. 1998) (quoting *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)). To survive a motion to dismiss under FED.R.CIV.P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at ___, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570.) "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*.

## DISCUSSION

In the previously referenced June 25, 2010, Memorandum of Decision, this Court concluded that the Defendants were experienced commercial entities and businessmen, represented

by experienced and sophisticated legal counsel at all relevant times. Because the Defendants failed to show any fundamental policy difference in the laws of Montana and New York with respect to the treatment of sophisticated commercial lenders and borrowers, this Court concluded that the law of New York applies to the Plaintiffs' and Defendants' disputes in this Adversary Proceeding. The Court also concluded that LCPI and LBHI owned the Senior and Mezz loans and that LCPI and LBHI were the proper parties to prosecute this Adversary Proceeding. Finally, the Court previously concluded on June 25, 2010, that three releases dated June 5, 2008, and one release dated June 19, 2009, were valid and enforceable against various of the Defendants.

A decision on the Motion to Dismiss by Woodlands is simple. Woodlands' only involvement in this case was that it provided funding for the Senior Loan. The Moonlight Claimants do not assert that Woodlands was involved in any way with the Advisory Agreement or the Mezz Loan. Similarly, the Moonlight Claimants do not specifically maintain that Woodlands was involved with any of the negotiations prior to September 7, 2007, or any of the negotiations or agreements subsequent to September 7, 2007. What the record shows is that Woodlands provided funding for the Senior Loan, as promised, and immediately thereafter assigned its rights to LCPI.

As to Woodlands, the Moonlight Claimants do not specifically identify Woodlands (or Lehman Brothers Commercial Bank) as a party to any of the alleged activities in such a manner to permit Woodlands to respond intelligently to the claims asserted. The Moonlight Claimants' Third Party Complaint does not satisfy Rule 8(a)(2) as to Woodlands.

In addition, the Moonlight Claimants' Third Party Complaint generally refers to Woodlands, LCPI, LBHI, Kohlmeyer, Gilhool and O'Reilly as "Lehman Brothers." Such general pleading does not inform Woodlands of the allegations surrounding its alleged participation in the

fraudulent activities asserted by the Moonlight Claimants. Therefore, Woodlands' request to dismiss those parts of the Third Party Complaint that sound in fraud is proper under Rule 9(b).

Finally, as to Woodlands, the Moonlight Claimants' Third Party Complaint does not have any facial plausibility. In other words, the Third Party Complaint does not contain any factual content that would allow this Court to draw the reasonable inference that Woodlands is liable for the misconduct alleged. To the contrary, the Moonlight Claimants assert that Lehman Brothers promised that it would lend Moonlight Basin Ranch $100 million through a subsidiary, Lehman Brothers Commercial Bank. Lehman Brothers Commercial Bank did as promised by lending Moonlight Basin Ranch $100 million on September 7, 2007. Based upon a careful review of the Moonlight Claimants' Third Party Complaint, the Court does not see any way Woodlands could be liable to the Moonlight Claimants. Dismissal of Woodlands from this action is thus proper.

While dismissal is a harsh remedy, given Woodlands limited involvement with the Senior Loan, the Court does not see how the Moonlight Claimants' Third Party Complaint could be saved by amendment. Nevertheless, Woodlands is dismissed from this Adversary Proceeding, without prejudice. Given Woodlands' dismissal from this Adversary Proceeding, the Court concludes that Woodlands' Motion to Stay Certain Discovery Activities filed July 16, 2010, at docket entry no. 107, was filed for good cause and thus, all depositions and any further written discovery requests involving Woodlands are stayed pending further order of this Court.

While the Moonlight Claimants' claims are deficient as to Woodlands, the claims are not deficient under Rule 8(a)(2), 9(b) and 12(b)(6) as to LCPI, LBHI, Kohlmeyer, Gilhool and O'Reilly. The Court agrees that the Moonlight Claimants do not always specifically differentiate between LCPI, LBHI, Kohlmeyer, Gilhool and O'Reilly when alleging various activities, but it is

plausible that the Moonlight Claimants are, at this time, unable to clearly differentiate between the various Lehman entities and it is equally plausible that the Moonlight Claimants do not know at this stage of the litigation who Kohlmeyer, Gilhool and O'Reilly were employed by during the relevant time periods. Additional facts will certainly be flushed out by all the parties during meaningful discovery.

Notwithstanding the foregoing, certain of the claims asserted by the Moonlight Claimants against LCPI and LBHI are problematic because in some instances, the Moonlight Claimants are asserting claims against LCPI and LBHI, yet the Moonlight Claimants failed to timely file claims in LCPI and LBHI's Chapter 11 bankruptcy cases. The Moonlight Claimants counter that they are "not seeking affirmative relief from LBHI or LCPI for its prepetition claims; Moonlight seeks setoff and/or recoupment claims, which are permitted regardless of whether the claimant filed a proof of claim." Moonlight Claimants' Response, dkt no. 69, p.6.

This Court's recent discussion regarding a party's right to a jury trial is instructive:

> In *[In re Commercial Fin. Services Inc. v. Jones (In re Commercial Fin. Services, Inc.)*, 251 B.R. 397 (Bankr. N.D.Okla. 2000)]*, the debtor filed a complaint for turnover of property and other relief against the defendant seeking payment on a demand note. 251 B.R. at 400. The defendant moved to withdraw the reference arguing that because he had not filed a proof of claim, he had not submitted himself to the jurisdiction of the bankruptcy court and was entitled to a jury trial before the district court. The court in *Commercial Fin. Services* disagreed because the defendant had also filed an answer to the debtor's complaint, which answer included an affirmative defense asserting that the defendant "may be owed money by CFS which may be set-off or recouped against any amount that he may owe to CFS." *Id.*
>
> The court in *Commercial Fin. Services* concluded that "the assertion of setoff, whether as a defense or as a counterclaim, clearly invokes the claims allowance process." 251 B.R. at 406. The court rejected the defendant's argument that by asserting setoff as a defense it was not actually seeking to recover from the estate but merely seeking to reduce the amount it would have to

14

pay to the estate, explaining:

> This Court fails to see a distinction between obtaining something of value from the estate by filing a claim and obtaining something of value from the estate, i.e., discharge of all or a portion of a debt to [the debtor] by asserting setoff as a defense. In both cases, the estate may be diminished and [the creditor] may be enriched.

*Id*. at 407; *see also Hedstrom Corp. v. Wal-Mart Stores, Inc. (In re Hedstrom Corp.),* 2006 WL 1120572, at *3 (N.D.Ill. Apr.24, 2006) (reasoning that "[w]hether [the debtor] writes [the creditor] a check or cancels [its] receivable, the end result is the same: the bankruptcy estate will be significantly diminished"); *Stoebner v. Leonard, O'Brien, Wilford, Spencer & Gale, Ltd. (In re O'Neill)*, 1997 WL 615661, *3 (Bankr. D.Minn. Oct. 2, 1997) (noting that a creditor who is entitled to set off the amount of its claims against the amount it owes to a debtor "has effectively received full payment on its claims instead of being limited to the amount of the Trustee's pro rata distribution"). The court in *Commercial Fin. Services* reasoned:

> Not only is Jones asserting a claim, his claim is treated as a secured claim, resulting in his claim, if proven and allowed, being satisfied in full, and in real dollars as opposed to "tiny bankruptcy dollars," to the extent that CFS recovers against him. *See, e.g., Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir.1984) ("In bankruptcy, setoff and recoupment play a role very different from their original role as rules of pleading. Setoff, in effect, elevates an unsecured claim to secured status to the extent that the debtor has a mutual, pre-petition claim against the creditor. Setoff is limited, however, by the provisions of 11 U.S.C. § 553.").

251 B.R. at 405-06 (footnote omitted).

In opposition, [the party seeking a jury trial] argue[d] that several cases, including *Container Recycling Alliance v. Lassman*, 359 B.R. 358 (D. Mass 2007) and [*Gecker v. Marathon Fin. Ins. Co., Inc. (In re Auto. Professionals, Inc.)*, 389 B.R. 621, 630 (N. D. Ill 2008)], "specifically reject the reasoning of *In re Commercial Fin. Servs*." After a careful review of *Container Recycling Alliance* and *Automotive Professionals*, this Court finds that *Container Recycling Alliance* and *Automotive Professionals* do not "specifically reject" *Commercial Fin. Servs*., but rather, support [the Trustee]'s position, and not [the party seeking a jury trial].

In *Container Recycling Alliance*, a Chapter 7 trustee commenced an adversary proceeding against Container Recycling Alliance alleging breach of contract, indemnification and breach of the implied covenant of good faith and

15

fair dealing. Container Recycling Alliance responded to the trustee's complaint with an answer that contained numerous affirmative defenses and three counterclaims, two of which included breach of contact claims. Container Recycling Alliance then moved to withdraw the reference. In deciding the withdrawal of reference motion, the district court concluded that Container Recycling Alliance had muddied the water by its "infelicitous" use of the term "setoff," because the facts supported a claim of "recoupment" as opposed to a claim of setoff. *Container Recycling Alliance*, 359 B.R. at 363. The district court explained that recoupment is "a reduction or rebate by the defendant of part of the plaintiff's claim because of a right in the defendant arising out of the same transaction" while setoff is a "counter-claim demand which defendant holds against plaintiff, arising out of a transaction extrinsic to plaintiff's cause of action." *Id.*, citing *United Structures of Am., Inc. v. G.R.G. Eng'g, S.E*, 9 F.3d 996, 998-99 (1st Cir. 1993). As the court in *Container Recycling Alliance* explained, just because a party "uses the incorrect technical terms for the means available to achieve that substantive end ought not be determinative of the parties' rights." 359 B.R. at 364. Because the claims in *Container Recycling Alliance* arose out of the same transaction--a commercial lease agreement--and because Container Recycling Alliance disclaimed any affirmative recovery, the court viewed the asserted defense as that of recoupment. Thus, the court concluded:

> [W]here the defendant in an adversary action initiated by a bankruptcy trustee has not filed a proof of claim but asserts claims for recoupment once sued, the defendant does not seek an affirmative recovery from the estate, but rather a fair accounting of the amount the estate is entitled to based on the resolution of a single, disputed, underlying transaction. The defendant is not asserting a claim against the debtor's estate as contemplated in either *Granfinanciera* or *Langenkamp*, and thus the defendant's right to a jury trial is unaffected.

*Container Recycling Alliance*, 359 B.R. at 365.

. . . [T]he judge in *Container Recycling Alliance* only disagreed with *Commercial Fin. Services* to the extent that it considered any defense to a trustee's adversary action as invoking the claims allowance and disallowance process: "A claim made by the trustee that has no merit and ought in justice be defeated should not be considered to hold any value for the estate." *Container Recycling Alliance,* 359 B.R. at 364-65, n.6.

As discussed in *Container Recycling Alliance*, numerous courts have focused on whether a claim, and in particular, a counterclaim is compulsory or permissive. 359 B.R. at 361-62. However, [r]egardless of the ultimate characterization of the counterclaim, . . . the courts' chief concern has been

16

whether the counterclaimant was seeking to achieve an affirmative recovery from the estate by circumventing the bankruptcy court's formal claims allowance procedure." 359 B.R. at 362.  The same focus holds true when dealing with a counterclaim versus a defense.  As persuasively explained in *Commercial Fin. Services*, "[t]he distinction between asserting setoff as a defense and asserting setoff as a claim is one without a difference insofar as the evidence required to be presented to prove the defendant's alleged right to setoff (proof of a prepetition valid and enforceable claim against the estate) and the prerequisites that must be satisfied to permit setoff against a claim of the estate ( i.e., that the defendant's claim is not disallowed)." *Commercial Fin. Services*, 251 B.R. at 406-07.

* * *

Similarly, the bankruptcy judge in *Automotive Professionals* did not disagree with *Commercial Fin. Serv.*, but instead agreed that courts need to "look past the technical title of a defense . . . and instead focus on the actual substance of the pleading to determine whether it is a claim against the bankruptcy estate." *Automotive Professionals*, 389 B.R. at 629-30.  In doing such, in accordance with Rule 8(c) of the Federal Rules of Civil Procedure, the court concluded that the defendant had improperly labeled its defense as "contribution" because the defendant was not claiming that it had to pay more than its share of liability to a third party.  Rather, the defendant in *Automotive Professionals* was merely asserting that it should not have to pay out any funds on vehicle service contracts until after the debtor depleted the funds it had on deposit in various reserve accounts.  The Court agreed that a claim for contribution would trigger the claims allowance process.  However, where the defendant was not seeking any recovery from the debtor's estate, but was merely asserting a defense, the court concluded that the claims allowance process was not triggered and the defendant had not waived its right to a jury trial.

A similar ruling was reached in [*Riley v. Wolverine, Proctor & Schwartz, LLC (In re Wolverine, Proctor & Schwartz, LLC)*, 404 B.R. 1 (D. Mass. 2009)], where the court found that the defendants had not waived their right to a jury trial by asserting an indemnification defense that was in the nature of recoupment.  404 B.R. at 4.  The court in *Wolverine* reasoned that because the defendants had "expressly disavowed and waived any affirmative recovery from the estate" that the indemnification defense was "effectively only an assertion of a right of recoupment, not setoff, and [did] not amount to an invocation of the claims allowance process."  *Id.*

Finally, . . . [t]he court in [*Styler v. Jean Bob (In re Concept Clubs, Inc.)*, 154 B.R. 581 (D. Utah 1993)] rejected the "parties efforts to characterize setoff merely as an affirmative defense, or counterclaim," and instead focused on

17

whether a creditor, through setoff, was seeking an affirmative recovery from a bankruptcy estate, which invokes the bankruptcy court's equitable powers, or whether the creditor was merely seeking to reduce or extinguish the amount sought by the trustee. *Concept Clubs*, 154 B.R. at 589.  The court in *Concept Clubs* concluded that:

> [A]n action for setoff raised as a counterclaim seeking affirmative relief necessarily submits the claimant to the equitable jurisdiction of the bankruptcy court, thereby waiving the Seventh Amendment right to a jury trial. By contrast, when setoff is raised only as an affirmative defense seeking to reduce, or extinguish, the original claim, the party asserting the claim does not invoke the bankruptcy court's equitable jurisdiction and retains the right to a jury trial.

*Id.*

Other than the conclusion that setoff as a defense does not involve the claims allowance process, the Court in *Commercial Fin. Services* found the analysis in *Concept Clubs* compelling.  251 B.R. at 406, n.10.  This Court agrees.

*Crum v. Blixseth (In re Big Springs Realty, LLC)*, Adversary Proceeding No. 09-65, dkt no. 184.

In reviewing the counts asserted by the Moonlight Claimants, the Court finds that the Moonlight Claimants are not seeking a fair accounting of the amount owed to LCPI and LBHI. Rather, the Moonlight Claimants are seeking an affirmative recovery from all parties, including LCPI and LBHI, on Counts II, III, IV, V, VI, VII, VIII, X, XI, XIII, XIV, XV XVI.  Such conclusion is particularly true with respect to the Moonlight Claimants' RICO violations claim in Count XV and the Moonlight Claimants' Punitive Damages claim in Count XVI.  All aforementioned counts are thus dismissed, without prejudice.

While the Court has dismissed 13 of the Moonlight Claimants' 15 counts against LCPI and LBHI, the Court nevertheless finds LCPI and LBHI's Motion for Protective Order and Stay of Discovery by Lenders and Third Party Defendants without merit.  LCPI and LBHI want relief in this matter without affording the Defendants an opportunity to conduct discovery.  The Court will

not permit such tactics.

The Court notes that the Moonlight Claimants filed a Motion for Leave to Amend Their Answer, Counterclaims and Third Party Complaint on July 9, 2010. Woodland's opposition to such motion is moot in light of the Court's decision herein. The Court finds LCPI, LBHI, Gilhool, Kohlmeyer and O'Reilly's opposition without merit. On July 27, 2010, the Court continued the commencement date of the trial in this matter from October 12, 2010, to December 8, 2010. The fact that LCPI and LBHI filed a motion for summary judgment in this matter before the Defendants were required to file an answer demonstrates that LCPI and LBHI have been trying to fast track this matter to a quick conclusion. Given that trial will not commence for over three months and given that the Court "should freely give leave [to amend] when justice so requires[,]" the Court deems it appropriate to grant the Moonlight Claimants' Motion for Leave to Amend Their Answer, Counterclaims and Third Party Complaint and vacate the hearing on such matter scheduled for September 13, 2010. In accordance with the foregoing, the Court will enter separate orders providing as follows:

IT IS ORDERED Woodlands Commercial Bank's Motion to Dismiss Third Party Complaint filed June 4, 2010, at docket entry no. 56, is GRANTED; and the Third Party Complaint filed by the Moonlight Claimants against Woodlands is DISMISSED, without prejudice.

IT IS FURTHER ORDERED Woodlands Commercial Bank's Motion to Stay Certain Discovery Activities and to Vacate the Trial Date filed July 16, 2010, at docket entry no. 107, is GRANTED; and depositions and any further written discovery requests involving Woodlands are stayed pending further order of this Court.

IT IS FURTHER ORDERED that Lehman Commercial Paper Inc., Lehman Brothers Holdings, Inc., Francis Gilhool, David O'Reilly, and Kurt Kohlmeyer's Motion to Dismiss the Counterclaims and Third Party Complaint of Moonlight Debtors filed June 4, 2010, at docket entry no. 59, is GRANTED in part and DENIED in part; and the Moonlight Claimants' claims, identified as Counts II, III, IV, V, VI, VII, VIII, X, XI, XIII, XIV, XV XVI, are DISMISSED as to Lehman Commercial Paper Inc. and Lehman Brothers Holdings, Inc., without prejudice.

IT IS FURTHER ORDERED the Motion for Protective Order and Stay of Discovery by Lenders and Third Party Defendants filed by Lehman Commercial Paper Inc., Lehman Brothers Holdings, Inc., Francis Gilhool, David O'Reilly, and Kurt Kohlmeyer on July 16, 2010, at docket entry no. 103, is DENIED.

IT IS FURTHER ORDERED the Moonlight Claimants' Motion for Leave to Amend Their Answer, Counterclaims and Third Party Complaint filed July 9, 2010, at docket entry no. 94 is GRANTED; the hearing on said Motion scheduled for September 13, 2010, is VACATED; and the Moonlight Claimants' shall have seven (7) days from the date of this Order to file their amended answer and counterclaims.

BY THE COURT

_____
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana