## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**MOONLIGHT BASIN RANCH LP**,

              Debtor.

Case No.  **09-62327-11**

---

**LEHMAN COMMERCIAL PAPER INC.**
And **LEHMAN BROTHERS HOLDINGS INC.**,

              Plaintiffs.

-vs-

**MOONLIGHT BASIN RANCH, LP, A/K/A MOONLIGHT BASIN RANCH, L.P., A/K/A MOONLIGHT BASIN RANCH COMPANY, A/K/A MOONLIGHT BASIN RANCH, LTD.**, **MOONLIGHT LODGE, LLC**, **MOONLIGHT SPA, LLC**, **MOONLIGHT GOLF LLC**, **MOONLIGHT BASIN, LLC**, **MOONLIGHT BASIN MEZZ LLC**, **MOONLIGHT BASIN HOLDINGS LLC**, **MOONLIGHT BASIN RANCH, INC.**, **TREELINE SPRINGS, L.L.C.**, **MOUNTAIN TOP CONSTRUCTION COMPANY, L.L.C.**, **LONE MOUNTAIN FOOD & BEVERAGE, LLC**, **LEE POOLE**, **SIX SHOOTER, L.C.C.**, **JVLP, L.C.C.**, **TIM WILLIAM ANDERSON**, **AARDVARK, L.L.C.**, and **FRONTIER STONE, L.L.C**,

              Defendants.

Adv No.  **10-00009**

1

# MEMORANDUM of DECISION

At Butte in said District this 17th day of September, 2010.

Pending in this Adversary Proceeding is a Motion for Summary Judgment filed July 21, 2010, by Defendants Lee Poole, Six Shooter LLC, JVLP LLC, Tim William Anderson, Aardvark LLC, Frontier Stone LLC, and Moonlight Basin Holdings LLC (collectively the "Poole Defendants"). *See* docket entry no. 118. The Poole Defendants' Motion for Summary Judgment was accompanied by a Brief in support thereof, a Statement of Undisputed Facts and an Affidavit of Lee Poole ("Poole"). The Poole Defendants argue that the following are undisputed facts:

## STATEMENT OF UNDISPUTED FACTS

1. Defendant Lee Poole is a resident of Madison County, Montana. (Poole Affidavit, ¶ 2)

2. Defendant Lee Poole is the sole member of JVLP, LLC and Six Shooter, LLC. Defendant Lee Poole is a 30% managing member of Poole Holdings, LLC. Poole Holdings, LLC is a 100% member of Moonlight Basin Holdings, LLC, which is a 100% member of Moonlight Basin Mezz, LLC. Moonlight Basin Mezz, LLC, is a 99% limited partner of Moonlight Basin Ranch, LP. A chart reflecting these ownership interests is attached as Exhibit C to Plaintiffs' Complaint. (Poole Affidavit, ¶ 3)

3. Moonlight Basin Ranch, Inc. is the General Partner of Moonlight Basin Ranch, LP. Lee Poole is the president of Moonlight Basin Ranch, Inc.

4. Defendant Lee Poole executed a Senior Sponsor Carve Out Guaranty on the 7th day of September, 2007. (Poole Affidavit, ¶ 5)

2

5.     Defendant Lee Poole executed a Senior Environmental Indemnity Agreement on the 7th day of September, 2007. (Poole Affidavit, ¶ 6)

6.     Defendant Lee Poole executed a Mezzanine Environmental Indemnity Agreement on the 7th day of September, 2007. (Poole Affidavit, ¶ 7)

7.     Defendant Lee Poole personally negotiated the terms of the Senior Sponsor Carve Out Guaranty, Senior Environmental Indemnity Agreement, and Mezzanine Environmental Indemnity Agreement.  Defendant Lee Poole conducted those negotiations in Montana.  At no time did Defendant Lee Poole travel to the state of New York for the purpose of conducting those negotiations. (Poole Affidavit, ¶ 8)

8.     Defendant Lee Poole signed the Senior Sponsor Carve Out Guaranty, Senior Environmental Indemnity Agreement, and Mezzanine Environmental Indemnity Agreement in Montana. (Poole Affidavit, ¶ 9)

9.     The obligation which was the subject of the Senior Sponsor Carve Out Guaranty was to be performed in the state of Montana.  The real property which secured the obligation which was the subject of the Senior Sponsor Carve Out Guaranty was located in the state of Montana. (Poole Affidavit, ¶ 10)

10.     The real property which was the subject of the Senior Environmental Indemnity Agreement and the Mezzanine Environmental Indemnity Agreement is located in the state of Montana. (Poole Affidavit, ¶ 11)

11.     At no time have Plaintiffs notified Defendant Lee Poole that he was in breach of the Senior Sponsor Carve Out Guaranty.  At no time have Plaintiffs notified Defendant Lee Poole that he was in breach of the Senior Environmental Indemnity Agreement or the Mezzanine

Environmental Indemnity Agreement. (Poole Affidavit, ¶ 12)

12.     Defendant Lee Poole is not aware of any event which would be considered an "indemnified environmental liability" as that term is defined in the Environmental Indemnity Agreements. (Poole Affidavit, ¶ 13)

13.     Lehman Commercial Paper, Inc., filed a Complaint to Foreclose Mortgages and to enforce the above-referenced guaranty and environmental indemnity agreements in the Montana Fifth Judicial District Court, Madison County, on the 11th day of September, 2009. (Poole Affidavit, ¶ 14)

14.     Moonlight Basin Ranch Limited Partnership filed a Petition pursuant to Chapter 11 of the United States Bankruptcy Code on November 18, 2009. (Poole Affidavit, ¶ 15)

15.     Moonlight Basin Ranch LP executed a Senior Secured Super Priority Debtor in Possession Credit Agreement on the 12th day of January, 2010. Defendant Poole did not sign a consent to that Agreement individually as a guarantor of the Senior Loan. (Doc. #277)

In response to the pending Motion for Summary Judgment and Statement of Undisputed Facts, the Plaintiffs, Lehman Brothers Holdings, Inc. ("LBHI") and Lehman Commercial Paper, Inc. ("LCPI") filed a Statement of Genuine Issues and a Brief in Opposition.  The Plaintiffs assert the following facts are disputed:

## STATEMENT OF GENUINE ISSUES

1.      **The following facts, all of which are undisputed, controvert Poole's statement and demonstrate that Lenders' Complaint notified Poole that he was in breach of the Poole Guaranty**

4

a.    In paragraph 27 of Lenders' Complaint,[1] Lenders detail the obligations under the Poole Guaranty: "Under the Senior Sponsor Carve Out Guaranty and the Mezz Sponsor Carve Out Guaranty, Poole, as 'Guarantor' ... guaranteed certain obligations -including losses in connection with the Loans upon a bankruptcy filing by the Borrower or Mezz Borrower."

b.    In paragraph 83(b) of Lenders' Complaint -under the bolded and underlined title "**Guaranties**" -Lenders explained that the Poole Guaranty triggered Poole's responsibility of the "entire Senior Loan itself upon certain contingencies, specifically including, but not limited to, a bankruptcy filing by Borrower."

c.    In paragraph 84(a) of Lenders' Complaint -under the bolded and underlined title "**Guaranties**" -Lenders explained that the Mezz Sponsor Carve Out Guaranty triggered Poole's responsibility of the "entire Mezz Loan itself upon certain contingencies, specifically including, but not limited to, a bankruptcy filing by the Mezz Borrower."

d.    In paragraph 149 of Lenders' Complaint, Lenders state that the Borrower filed for bankruptcy.

e.    Poole's attorney admitted at the August 10, 2010, hearing on the motion for protective order that "there's a provision in the guarantee that suggests that if Moonlight itself filed bankruptcy, that that would be an act that triggers the guarantee." August 10, 2010, Hearing Transcript, at p. 48.

f.    On September 11, 2009, Lehman sued Poole on his guaranty alleging that he violated his guaranty.  Lehman sought a judgment and damages from Poole for the violations of his

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in Lenders' Complaint for Declaratory Relief filed with the Court on February 2, 2010 ("Lenders Complaint") [Docket No.1].

5

guaranty.  *See* Foreclosure Complaint (Count 3, §136-143), attached . . . as Exhibit A [to

Plaintiffs' Statement of Genuine Issues].

      **2.**      **The following facts, all of which are undisputed, controvert Poole's statement and demonstrate that he did consent to the DIP Agreement**

      a.     Poole provided advance consent to any and all alterations of the underlying

obligation, including the execution of the Senior Secured Super Priority Debtor in Possession

Credit Agreement, dated January 12, 2010 (the "DIP Agreement"), pursuant to section 6 of the

Poole Guaranty, which states in relevant part that:

> "the liability of Guarantor hereunder shall in no way be terminated, affected, modified, impaired or diminished (to the extent permitted by law) by reason of the happening, from time to time, of any of the following, although without notice or the further consent of Guarantor: any assignment, amendment, modification or waiver of or change in any of the terms, covenants, conditions or provisions of the Credit Agreement, the Note (if any), the Mortgages or any of the other Loan Documents or the invalidity or unenforceability of any of the foregoing, or . . . any action that Agent or Guarantor may take or fail to take under or in respect of any of the Loan Documents.["]

Compl. Ex. T at §6.[2]

      b.     Poole affirmatively sought a DIP loan prior to Lenders' involvement in or

negotiation of the DIP financing.  *See* Motion for Interim and Final Orders Authorizing Debtors

to Obtain Post-Petition Financing, dated November 18, 2009 [Docket No. 9].

      c.     Poole, on behalf of Moonlight, initially sought "to secure debtor-in-possession

financing from Trilogy Capital," Order on Debtors' Motion for Interim and Final Orders

Authorizing Debtors to Obtain Post-Petition Financing, dated November 30, 2009 [Docket No.

65], p. 4, and Poole himself signed the DIP term sheet with Trilogy Capital.  *See* Motion for

---

      [2] All references to "Compl. Ex." refer to the exhibits attached to Plaintiffs' Complaint filed February 2, 2010.

6

Interim and Final Orders Authorizing Debtors to Obtain Post-Petition Financing, Exhibit A.

     d.    Poole participated in the negotiation and execution of the DIP Agreement with Lenders.

     e.    Poole signed the DIP Agreement in numerous capacities, including on behalf of: (1) Moonlight Basin Ranch LP; (2) JVLP, LLC; (3) Six Shooter, LLC; (4) Moonlight Basin Mezz, LLC; (5) Mountain Top Construction, LLC; (5) Lone Mountain Food & Beverage, LLC; (6) Moonlight Lodge, LLC; (7) Treeline Springs, LLC (8) Moonlight Gold, LLC; (9) Moonlight Spa, LLC; and (10) Moonlight Basin, LLC. *See* Notice of Lodging Debtor-In-Possession Credit Agreement [Docket No. 277], Signature Pages to the DIP Agreement.

     f.    Poole admits that he ultimately controls the debtors. *See* Debtors and Non-Debtors' Responses to Plaintiffs' Discovery Responses, Request No. 3, attached . . . as Exhibit B [to Plaintiffs' Statement of Genuine Issues].

     g.    Poole admits that he has the final decision making authority with respect to the Debtors. *See* Exhibit B, Request No.4.

     h.    Poole admits that he is "the chief decision maker" for the Debtors. Motion p. 16.

     i.    Poole admits that he is the president and majority shareholder of Moonlight Basin Ranch, Inc, the general partner of the DIP borrower, Moonlight Basin Ranch L.P. *See* Poole's Statement of Undisputed Facts, ¶ 3; *see also* Motion p. 17.

     j.    Poole admits that he is "presently the sole equity owner of the Resort operating entities." Debtors and Non-Debtors' Responses to Plaintiffs' Discovery Requests, Request 10.

     k.    The Organizational Chart of Borrower (Compl. Ex. C) demonstrates that Poole is the principal indirect owner of the Borrower, Mezz Borrower, and the Subsidiaries.

7

l.     Some of the most significant and time-consuming negotiations for the DIP

Agreement related to Poole.

m.     Poole's salary was a negotiated element of the DIP negotiations.  *See* Order

Authorizing Debtors to Obtain Postpetition Financing on a Superpriority and Priming Basis,

dated December 8, 2009 [Docket No. 113], ¶(i).

n.     The Court confirmed that Poole's salary was a part of the DIP Agreement:  the

"Debtors may pay Lee Poole customary and reasonable compensation for services performed on

behalf of the Debtors as mutually agreed by the Debtors and the DIP Lender and set forth in the

Budget."  Order Authorizing Debtors to Obtain Postpetition Financing on a Superpriority and

Priming Basis.

o.     Poole's attorney appeared before the Court on behalf of Lee Poole at a hearing

held on Debtors' motion for interim and final orders authorizing debtors to obtain post-petition

financing.  *See* Order on Debtors' Motion for Interim and Final Orders Authorizing Debtors to

Obtain Post-Petition Financing, p. 1.

p.     At the hearing held on Debtors' motion for interim and final orders authorizing

debtors to obtain post-petition financing, Poole's attorney confirmed his representation of

Poole and the other non-debtors, and indicated he had authority to "commit on their behalf":

> **MR. JAMES**: Your Honor, on that, just, you know, one point here of concern,
> and that is that Mr. Lilly has indicated that he represents Lee Poole. I believe
> there are some other nondebtor parties who are affected by this. And I'm not sure
> that they're represented by anyone before the Court today, so I don't know if
> that's the case or not.
> **THE COURT**: Mr. Lilly.
> **MR. LILLY**: Your Honor, the record should reflect that I am here on behalf of
> Mr. Poole as well as Mr. Anderson and the limited liability companies that have
> not filed a bankruptcy petition that Mr. James is referring to.

8

   **THE COURT**: Okay.

   **MR. LILLY**: And I have the authority to commit on their behalf as well.

   **THE COURT**: Okay, thank you.

*See* Nov. 24, 2009 Hearing Transcript, at pgs. 95-96.

   In addition to the foregoing undisputed facts, the Plaintiffs contend that the following undisputed facts establish that the Poole Defendants are not entitled to summary judgment as a matter of law:

   **Execution of the Sponsor Carve Out Guaranties and Environmental Indemnities**

   1. For the purpose of further securing payment of the indebtedness and performance under the Credit Agreement, several guaranties were duly executed and delivered to LCPI, including (a) a guaranty of specified losses in connection with the Senior Loan, and the entire Senior Loan itself upon certain contingencies, specifically including but not limited to, a bankruptcy filing by the Borrower, pursuant to the Poole Guaranty, provided by Poole to LCPI (*See* Compl. Ex. T at §1(ii)(a)); and (b) the Environmental Indemnity Agreement, dated September 7,2007, and provided by Borrower and Poole to LCPI (the "**Senior Environmental Indemnity**"), which, by its terms, survives repayment of the Senior Loan, or the exercise by LCPI of its remedies with respect thereto (*See* Compl. Ex. U).

   2. For the purpose of further securing payment of the indebtedness and performance under the Mezz Agreement, several guaranties were duly executed and delivered to LBHI, including (a) a guaranty of specified losses in connection with the Mezz Loan, and the entire Senior Loan itself upon certain contingencies, specifically including but not limited to, a bankruptcy filing by the Mezz Borrower, pursuant to the Sponsor Carve Out Guaranty, provided by Poole to LBHI, dated September 7, 2007 (the "**Poole Mezz Guaranty**") (*See* Compl. Ex. T at

§1(ii)(a)); and (b) the Environmental Indemnity Agreement, dated September 7, 2007, and provided by Mezz Borrower and Poole to LBHI, which, by its terms, survives repayment of the Loan, or the exercise by LBHI of its remedies with respect thereto (the **"Mezz Environmental Indemnity**," together with the Senior Environmental Indemnity, the "**Indemnities**") (*See* Compl. Ex. W).

### New York Law Applies to the Dispute

3.     The Loan Documents, including the Poole Guaranty and the Indemnities, all contain a choice-of-law provision specifying that New York law applies. *See, e.g.* Compl. Ex A (Credit Agreement) at § 9.l7; Ex. T (Poole Guaranty) at § 21; Exhibit U (Senior Environmental Indemnity) at § 8( c); Exhibit W (Mezzanine Environmental Indemnity) at § 8( c).

4.     The Court ruled that "the law of New York applies to the Plaintiffs' and Defendants' disputes in this case" because Defendants failed to show "any fundamental policy difference in the laws of Montana and New York."  Memorandum of Decision Granting in Part Lender's Motion for Summary Judgment, dated June 25, 2010 [Docket No. 81] ("**Summary Judgment Memorandum**"), pp. 78-79; *see also* Memorandum of Decision Granting in Part Lenders' Motion to Dismiss, dated August 26, 2010 [Docket No. 146] ("Motion to Dismiss Memorandum"), p. 12.

5.     Poole states in the Motion that New York and Montana law are the same with respect to his public policy arguments regarding the bankruptcy provision in the Poole Guaranty. *See* Motion p. 15 ("In New York, the same rule applies"), p. 16 ("New York law also recognizes a person's or entity's right to access to the courts"), p. 19 ("The public policy of both Montana and New York compel the conclusion that ..."), p. 20 ("it is invalid and unenforceable under both

10

Montana and New York law.").

### The Summary Judgment Order Bars Poole from
### Claiming that the Poole Guaranty Violates Public Policy

6.     Poole raised the same public policy arguments in his opposition to Lender's motion for summary judgment: "[the bankruptcy provision] is in violation of Montana statutory law [which] prevents any provision in a contract that makes it impossible to seek judicial recourse, and that's exactly what that provision does.  I would also argue that the provision is against the Constitution of the State of Montana [which] guarantees us all access to the courts."  *See* April 19, 2010, Hearing Transcript, at pp. 51-52.

7.     The Court ruled in its Summary Judgment Order that "Release 1 is a release by Poole of any claim or defense he may have asserted under the Sponsor Carve Out Guaranty," "Release 2 encompasses any claim or defense that Poole may have had under the Sponsor Carve Out Guaranty," and "Release 4 is also effective against any claim that Poole might assert under the Sponsor Carve Out Guaranty."  Order Granting in Part Lenders' Motion for Summary Judgment, dated June 25, 2010 [Docket No. 81] ("**Summary Judgment Order**"), pp. 2-4.

8.     Poole admits that the Summary Judgment Order "held that Releases 1, 2, and 4 were valid and effective against Defendant Poole for any claims he asserts under the Sponsor Carve Out Guaranty."  Motion p. 3.

9.     Poole admits that he "personally negotiated the terms of the Senior Sponsor Carve Out Guaranty."  Poole's Statement of Undisputed Facts ¶ 7.

10.     Poole is clearly an "experienced ... businessmen, represented by experienced and sophisticated legal counsel at all relevant times,"  Summary Judgment Memorandum p. 60,

including prior to signing the Poole Guaranty.

### The Bankruptcy Clause Does Not Violate Public Policy

11.    Poole cites no cases that deal with or discuss the validity of bankruptcy-contingent recourse provisions.  *See* generally Motion.

### The Indemnities

12.    Lenders do not seek a declaration that Poole breached the Indemnities.  Lenders merely seek a declaration that the Indemnities are valid, binding, and enforceable.  *See* Compl. p. 40.

13.    Lenders clarified the relief they seek with respect to the Indemnities at the summary judgment hearing, stating that "[o]n the environmental indemnity agreement, Your Honor, we concede, as I sit here today I don't know of any breach of the environmental indemnity agreement. That is not our argument."  April 19, 2010, Hearing Transcript, at p. 6l.

14.    On numerous occasions, the Moonlight parties have argued that the Loan Documents, including the Indemnities, are invalid and unenforceable, including in their filings before this Court as well as before the Montana state court.  *See e.g.* Memorandum Establishing Invalidity of Loan Documents and Purported Releases of Debtors' Claims [Docket No. 92]; Defendant Lee Poole's Amended Answer and Affirmative Defenses to First Amendment Complaint, Compl. Ex. JJ.

15.    Poole raised the same arguments regarding the Indemnities in his opposition to Lender's motion for summary judgment, alleging that Lenders "are not entitled to summary judgment in connection with its claims on the Indemnity Agreements."  *See* Nondebtors' Opposition to Motion for Summary Judgment [Docket No. 41] p. 23.

12

16.     The Court ruled in its Summary Judgment Memorandum that "there is a material question of fact as to whether Poole has released his claims and defenses under the Environmental Indemnity Agreement."  Summary Judgment Memorandum pp. 78-79.

## SUMMARY JUDGMENT

Summary judgment is governed by FED.R.BANKR.P. 7056.  Rule 7056, incorporating FED.R.CIV.P. 56(c), states that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  "The proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial."  *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373 (9th Cir. BAP 1997) (quoting *Grzybowski v. Aquaslide "N' Dive Corp. (In re Aquaslide "N" Dive Corp.)*, 85 B.R. 545, 547 (9th Cir. BAP 1987)).  The manner in which this burden is proven depends on which party has the burden on a particular claim or defense at the time of trial.

> If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence–using any of the materials specified in Rule 56(c)–that would entitle it to a directed verdict if not controverted at trial. Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial or to submit an affidavit requesting additional time for discovery.  If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 330-34, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986)

13

(Brennan dissent) (citations omitted). *See also Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102-06 (9th Cir. 2000) (discussing burdens for withstanding summary judgment).

When seeking summary judgment, the moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischback & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986), *cert. denied*, 469 U.S. 949 (1986); FED. R. CIV. P. 56(e). *See also Frederick S. Wyle Prof'l. Corp. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir. 1985) ("the opponent must affirmatively show that a material issue of fact remains in dispute"). That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, "[a] party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

To demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge and the facts set forth therein must be admissible into evidence. *Aquaslide*, 85 B.R. at 547. All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. *Liberty Lobby,* 477 U.S. at 247-48, 106 S.Ct. at 2509. However, "[d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv.*, 809 F.2d at 630 (citing *Liberty Lobby*, 477 U.S.

14

at 248, 106 S.Ct. at 2510).  "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit.  The materiality of a fact is thus determined by the substantive law governing the claim or defense."  *Id*.

If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied.  *T.W. Elec. Serv.*, 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 202 (1986).  Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence.  *T.W. Elec. Serv.*, 809 F.2d at 631.  In the absence of any disputed material facts, the inquiry shifts to whether the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552-53.

## CONTENTIONS of the PARTIES

The Poole Defendants seek summary judgment declaring that:

1.  Paragraph 1ii(a) of the Senior Sponsor Carve Out Guaranty is unlawful and against public policy and therefore invalid, void, and unenforceable.

2.  Lehman Commercial Paper, Inc., does not have a liquidated and noncontingent claim against Defendant Lee Poole pursuant to the Senior Sponsor Carve Out Guaranty.

3.  Lehman Commercial Paper, Inc., does not have a liquidated and noncontingent claim against Defendant Lee Poole pursuant to the Senior Environmental Indemnity Agreement.

4.  Lehman Brothers Holdings, Inc., does not have a liquidated and noncontingent claim against Defendant Lee Poole pursuant to the Mezzanine Environmental Indemnity Agreement.

15

The Poole Defendants' request for relief is based in part on paragraph 1 of the Plaintiffs' Complaint, which reads: "This action seeks a declaration from the Court that (i) the Loan Documents (defined herein) between Lehman Brothers Commercial Paper Inc. ('LCPI'), Lehman Brothers Holdings Inc. ('LBHI'), and Defendants . . . are valid, binding, and enforceable, [and] (ii) LCPI and LBHI have valid, enforceable, liquidated, and non-contingent claims against Defendants for all amounts due under the Loan Documents." The specific prayers for relief attacked by the Poole Defendants in their pending Motion for Summary Judgment are:

1b.     LCPI and LBHI have valid, enforceable, liquidated, and noncontingent claims against Defendants for all amounts due under the Loan Documents;

* * *

1h.     The Senior Sponsor Carve Out Guaranty is valid, binding, and enforceable;

* * *

1j.     The Senior Environmental Indemnity is valid, binding, and enforceable;

* * *

1n.     The Mezz Environmental Indemnity is valid, binding, and enforceable[.]

As a result of the language in paragraph 1 of the Complaint and paragraphs 1b, 1h, 1j and 1n of the Plaintiffs' prayer for relief, the Poole Defendants contend "that Plaintiffs are asking this Court to declare that Defendant Poole is obligated to them for the full amount of the Senior Loan based upon the Guaranty" and that Plaintiffs are "asking for a declaration of a breach of the Environmental Indemnity Agreements."

## DISCUSSION

In a Memorandum of Decision and Order entered June 25, 2010, this Court previously

16

concluded that because "the Defendants ha[d] not established any fundamental policy difference in the laws of Montana and New York with respect to the treatment of sophisticated commercial lenders and borrowers," that "the law of New York applies to the Plaintiffs' and Defendants' disputes in this case." The Court also held in the same Memorandum of Decision and Judgment that a release contained in a June 5, 2008, Senior Extension Agreement, Release 1, was "a release by Poole of any claim or defense he may have asserted under the Sponsor Carve Out Guaranty[.]" The Court could not conclude at that time that such Release "[wa]s a release by Poole of his claims and defenses under the Environmental Indemnity Agreement."

The Court similarly concluded that a release in the June 5, 2008, Mezz Ratification and Amendment, Release 2, was a valid release of "any claim or defense that Poole may have had under the Sponsor Carve Out Guaranty." The Court did not conclude that "Poole validly and effectively released his claims and defenses under the Environmental Indemnity Agreement to the Mezz Loan.

Finally, the Court concluded that a release in the June 19, 2009, Senior Forbearance Agreement, Release 4, was "effective against any claim that Poole might assert under the Sponsor Carve Out Guaranty[.] An issue of fact precluded the Court from determining whether Poole released his claims under the Environmental Indemnity Agreement.

The Poole Defendants argue that their pending Motion for Summary Judgment requires that the Court resolve issues surrounding Poole's Senior Sponsor Carve Out Guaranty, the Senior Environmental Indemnity Agreement and the Mezz Environmental Indemnity Agreement. In order to do so, the Poole Defendants contend that this Court must perform an "independent analysis" to determine whether New York law governs the Senior Sponsor Carve Out Guaranty,

the Senior Environmental Indemnity Agreement and the Mezz Environmental Indemnity Agreement.  As noted above, this Court previously ruled in this Adversary Proceeding that "the law of New York applies to the Plaintiffs' and Defendants' disputes in this case."  The Court incorporates its June 25, 2010, ruling here and concludes that no further discussion is necessary on the choice of law issue raised by the Poole Defendants.

      1.     Sponsor Carve Out Guaranty

The Poole Defendants proceed to argue that Paragraph 1ii(a) of the Senior Sponsor Carve Out Guaranty is unlawful and against public policy and therefore invalid, void, and unenforceable.  The Poole Defendants argue in their Brief that "Section (ii)(a) of the Guaranty provides that a bankruptcy filing by Moonlight Basin Ranch triggers Defendant Poole's guaranty of the full amount of the Senior Loan."  The Poole Defendants contend that Plaintiffs have not pled that Moonlight Basin Ranch's bankruptcy filing was an event triggering the guaranty and thus, Plaintiffs have failed to state a claim for relief under FED.R.CIV.P. 8(a)(2).  The requirement of a short and plain statement means a complaint must include "sufficient allegations to put defendants fairly on notice of the claims against them."  *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir.1991).  The Plaintiffs' Complaint is sufficient to put Poole and the Poole Defendants on notice of the claims against them.

The Poole Defendants next contend that the Senior Sponsor Carve Out Guaranty is against public policy because it is designed to restrict the Moonlight Basin Ranch's ability to seek protection under the Bankruptcy Code by obligating Poole to pay LCPI "the full amount owed to it by Moonlight Basin Ranch" in the event of bankruptcy.  The Poole Defendants contend that such bankruptcy provision "acts as a restriction against Moonlight's access to the

18

bankruptcy court," and "impairs Moonlight's ability to file for protection under the Bankruptcy Code."

The Poole Defendants similarly argue that the bankruptcy clause found in the Senior Sponsor Carve Out Guaranty "tends to induce Defendant Poole and Moonlight Basin Ranch, Inc. to violate the fiduciary duty of utmost good faith owed to Moonlight Basin Ranch LP." As explained in the Poole Defendants' brief, "[i]f the exercise of that good faith require Moonlight Basin Ranch LP to go into bankruptcy, Defendant Poole was obligated to take it there. On the other hand, by taking Moonlight Basin Ranch, LP into bankruptcy, Defendant Poole placed himself personally at risk for the entire Moonlight Basin Senior Loan. Clearly, the bankruptcy clause tended to induce Defendant Poole to breach his fiduciary duty."

This Court previously determined that Releases 1, 2 and 4 were effective as to any claim that Poole might assert under the Sponsor Carve Out Guaranty. The Poole Defendants' attempt to attack the bankruptcy provision is contrary to this Court's prior ruling. In addition, even if Poole could somehow circumvent the numerous Releases, the Court would not entertain the Poole Defendants' Motion for Summary Judgment on this basis because the fact that the Moonlight Debtors did in fact file for protection under the Bankruptcy Code defeats the Poole Defendants' argument.

Finally, the Poole Defendants assert that Poole was exonerated from the Senior Sponsor Carve Out Guaranty when LCPI extended debtor in possession financing to Moonlight Basin Ranch, LP on a super priority basis, without Defendant's Poole's specific signature as guarantor. The moving parties concede in their Brief that New York law does not provide for the exoneration of a guaranty based upon the post execution acts of the creditor. No further

19

discussion of this point is necessary given the Court's prior ruling that New York law applies.

Poole also seeks a summary judgment ruling that LCPI does not have a liquidated and noncontingent claim against Poole under the Sponsor Carve Out Guaranties. The Court agrees with the Poole Defendants that the Complaint is not a model of clarity on this point. On the one hand, the Plaintiffs seek a declaratory judgment that "LCPI and LBHI have valid, enforceable, liquidated, and noncontingent claims against Defendants for all amounts due under the Loan Documents[.]" Although such claim for relief may suggest that the Plaintiffs are seeking to recover all amounts owed from not only the Moonlight borrowers, but also from the remaining Defendants, which may constitute a double recovery, that issue will await another day as discussed below. On the other hand, the Plaintiffs also seek a ruling that the "Senior Sponsor Carve Out Guaranty is valid, binding and enforceable[.]"

A ruling on whether the Senior Sponsor Carve Out Guaranty is valid, binding and enforceable should be relatively straightforward in light of this Court's prior ruling on the Releases as discussed above. However, the Court sees a material issue of fact as to whether the Plaintiffs are entitled to a claim against Poole under the Sponsor Carve Out Guaranty for all amounts owed, when the Plaintiffs should receive substantial repayment from the Moonlight Debtors, whether through actual payment or foreclosure. The Court is not inclined to enter a summary ruling on either the Plaintiffs' or the Poole Defendants' behalf on such point at this stage in the litigation.

2.      Environmental Indemnity Agreements

As a final matter, the Poole Defendants contend that LCPI and LBHI do not have liquidated and noncontingent claims against Poole pursuant to the Environmental Indemnity

Agreements.  In support of such claim, the Poole Defendants assert first that the Plaintiffs' claim

does not involve a case or controversy.  Second, the Poole Defendants contend  Plaintiffs are

seeking an advisory opinion that is prohibited by the Declaratory Judgment Act and Article III of

the Constitution.  On this issue, Defendants argue that no immediacy exists in this case and no

genuine issues of material fact exist.

The Court agrees with the Poole Defendants that Plaintiffs' Complaint could arguably be

construed as seeking a ruling that LCPI and LBHI have valid, enforceable, liquidated, and

noncontingent claims against all Defendants for all amounts due under the Loan Documents as a

result of the Environmental Indemnity Agreements.  However, such interpretation of the

Complaint is tempered by the prayers for relief at paragraphs 1j and 1n, wherein the Plaintiffs

merely seek a ruling that the Environmental Indemnity Agreements are valid, binding and

enforceable.

Moreover, in response to the Poole Defendants' Motion, the Plaintiffs confirm that they

"are *not* seeking a judgment that Poole *breached* the indemnities or that Poole is *'obligated to

them for unspecified sums*.'" Plaintiffs' Opposition, dkt no. 156, p22. (Emphasis in original)

While the Plaintiffs have clearly clarified that they are not seeking any ruling at this time that

Poole breached the Environmental Indemnity Agreements or as a result, is responsible for any

corresponding damages, this Court previously stated in the June 25, 2010, Memorandum of

Decision, that "there is a material question of fact as to whether Poole has released his claims and

defenses under the Environmental Indemnity Agreement."  Given all the questions that still exist

in this case, it is clear that this matter should proceed to trial on the merits.  For the reasons

discussed in this Memorandum of Decision, the Court will enter a separate order providing as

follows:

IT IS ORDERED that the Motion for Summary Judgment filed July 21, 2010, by

Defendants Lee Poole, Six Shooter LLC, JVLP LLC, Tim William Anderson, Aardvark LLC,

Frontier Stone LLC, and Moonlight Basin Holdings LLC, at docket entry no. 118, is DENIED.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana